**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE ANGEL GARCIA,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 10-04 Erie** |
| | ) | |
| **v.** | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **RAYMOND SOBINA, et al.,** | ) | |
| **Respondent.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

**II.     REPORT**[1]

**A.      Relevant Background**

Garcia's claims center around issues related to his unsuccessful efforts to suppress evidence against him.  Specifically, he challenges the affidavit of probable cause that accompanied a search warrant.

On May 19, 2005, Erie County Detective Mark Rosenthal, a member of the Vice and Narcotics Unit, submitted the affidavit of probable cause in order to obtain a warrant to search Garcia's apartment, which was located at 640 Young Rd. #2 in Erie.  (The affidavit of probable cause is attached as an exhibit to CP Dkt. No. 31).  In the affidavit of probable cause, it was explained that on May 13, 2005, a

---

[1]      Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which will be cited to as "CP Dkt. No. __."

confidential informant had notified the police that Garcia had offered to supply him with cocaine.  The informant agreed to wear a body wire and record his conversations with Garcia.

On May 16, 2005, the informant was wired with a recording/transmitting device and met with Garcia at an Erie tavern.  Their conversation was monitored and recorded.  Det. Rosenthal recounted their conversation as follows:

> Garcia discussed supplying cocaine to the CI and spoke openly about his cocaine dealings and prices.  Garcia told the CI he was now out of cocaine, but would be re-supplied on 5/18/05.  The CI explained that Garcia was supplied by a H/M from New York known as "Dominican Tony".  "Dominican Tony" sent associates of his from New York to deliver the cocaine to Erie and pick up the money to be brought back.  In the recorded conversation, Garcia speaks openly about his dealings with one of these couriers and having to come up with extra money so the courier could make it back with a certain amount of cash to take back to the supplier.  Garcia said the courier has rented hotel rooms in the past to wait for the money.  Garcia told the CI the courier drove a van and in the past dropped off the supply at Garcia's residence when Garcia was not there.  Garcia drove a white Escort to the meeting that had PA reg. plate DYM-2742 that came back to Stephanie Johnson of 640 Young Rd. #2, Erie PA.

(Affidavit of Probable Cause at 3).

On May 17, 2005, the Confidential Informant contacted the police and advised them that Garcia had told him that he would be re-supplied with drugs the next day, on May 18.  The police set up surveillance outside of Garcia's apartment.  In the affidavit of probable cause, Det. Rosenthal described what the police learned from the surveillance and asked that a search warrant be issued:

> On 5/18/05 surveillance was set up on 640 Young Rd beginning at approximately 0900hrs.  Members of the EPD Vice unit and this affiant conducted the surveillance.  Sgt. Nolan called the apartment owner and confirmed that Stephanie Johnson rented 640 Young Rd. #2.  The White Escort was there until approximately 1445hrs.  At that time, Garcia and a W/F exited the apartment building and got into the Escort.  The W/F drove Garcia to Modern Industries.

> Surveillance was continued until 2300hrs when the second shift ended.  Garcia got a ride from an unknown individual to a parking lot at West 2nd and Peach Streets.  There, he got into the white Escort and drove to the Beer Mug Tavern on the 100 blk of Liberty.  As this was occurring, Sgt. Nolan received a call from the CI who stated Garcia just called him and wanted to meet him at the Beer Mug.  Sgt. Nolan met with the CI and equipped

him with the [recording/transmitting device] and sent the CI down to meet him at the Beer Mug. The CI informed Sgt. Nolan that Garcia called him a second time and told the CI that the courier left NYC at 1600hrs and would definitely be here tonight. The CI and his vehicle were searched prior to the meeting. The CI was followed to the Beer Mug and the conversation was monitored by officers. Garcia assured the CI that the new supply would be here this evening. Garcia then said his supplier was here and he would get "one" for the CI. The CI told Garcia he wanted more than "one" (meaning 1 ounce of cocaine). Garcia then asked the CI for $500 because he was a little short in his expected payment to the courier. The CI agreed and told Garcia he had to go and get the money then left. The CI met up with Sgt. Nolan who provided the CI with $500 of marked buy money. The CI then called Garcia and told him to meet him at his house to get the money. Garcia agreed. The CI was followed by Sgt. Nolan to his residence and was under surveillance the entire time. Garcia was followed to the CI's residence where he was given the $500 by the CI. Garcia told the CI he'd call him later.

It is well known that it taked [sic] approximately 8 hours to drive to New York City, which is where Garcia's supplier is. Garcia stated the courier left NYC at 1600hrs which makes 2400hrs the likely time of arrival.

As this meeting was occurring, I was conducting surviellance [sic] of 640 Young Rd (beginning at approx. 2240hrs). I did observe a green Nissan mini-van with NY reg. CYG-9594 parked in front of the entrance to 640 Young Rd. [It] was already there when I arrived. The vehicle was occupied by a H/M driver. The plate was run and it came back to Manuel Polanco-Urena of the Bronx, NY. The vehicle left (approx. 2400hrs) shortly after I noticed it and I followed it to the area of Rt. 97 and I-90 where I lost sight of it briefly then I found it at the Shell Station. I continued surveillance of this vehicle while the other Detectives followed Garcia from the CI's residence to 640 Young Rd.

Garcia arrived at his residence at approximately 00035hrs on 5/19/05. He was let in by his girlfriend who opened the door for him. A few minutes later, the mini-van left the Shell Station and drove directly to 640 Young Rd. Garcia exited his residence at the same time the mini-van arrived. The driver of the mini-van exited and walked across the parking lot towards Garcia. The unknown H/M had nothing in his hands when he met with Garcia. Garcia and the H/M went inside the building together. Approximately 15 minutes later the H/M came out carrying a white plastic bag in his hands with something in it. The H/M got into the van and drove away. Det. Mike Chodubski and I followed the van eastbound on 1-90 and performed a traffic stop on it just past the Rt.8 underpass with the assistance of a marked EPD cruiser. The driver identified himself as Manuel Polanco-Urena of the Bronx. The white plastic bag was in plain view on the floor of the van and one could clearly see that there was a large amount of money in the bag, approximately 6-8 inches thick. The plastic was very thin and semi-transparent. The bag was tied in a knot and the cash could be seen through the gaps in the plastic. He was mirandized and advised we were conducting a drug investigation. He stated he was coming from Pittsburgh and was on his way home to the Bronx. He was asked if he stopped anywhere in Erie. He said he only stopped for gas and nothing else. He was

asked if he met with anybody in the area. He said no. Sgt. Nolan asked him about the bag in the van and the cash in it. He denied any knowledge of the bag or any money. He was asked several times in different ways if he met with Jose Garcia, went into his apartment, brought him cocaine, got money from him or otherwise had any dealings with him or anyone else during his stop in the Erie area. He adamantly denied doing anything other than stopping for gas[.]

Based upon the information contained within this affidavit, it is highly probable that Polanco-Urena is the courier Garcia had been waiting on for a new supply of cocaine. Although he was never observed taking anything into Garcia's residence, that does not preclude him from having taken cocaine into the apartment prior to our surveillance or even having it concealed in his clothing, which is very common according to the experiences of Sgt. Nolan and myself. The fact that Polanco-Urena was observed carrying a bag with a large amount of cash out of Garcia's apartment and then denying any knowledge of doing so, or even being there, is indicative of illegal activity. [The confidential informant] has not worked as a CI prior to providing this information and has no history of reliability. However, [his] reliability was established through the use of the body recorder/transmitter and other facts of this case.

Based upon the probable cause contained within the affidavit, it is requested that a search warrant be issued allowing for the search of cocaine and related contraband inside 640 Young Rd. #2.

(Affidavit of Probable Cause at 3-4).

The search warrant was issued and the police found cocaine in Garcia's home. He was charged with one count each of Possession With Intent to Deliver; Possession; Possession of Drug Paraphernalia, and Conspiracy to Commit Possession With Intent to Deliver.

After Garcia's arrest, the court appointed Steven Lagner, Esquire, with the Erie County Public Defender's Office, to represent him. Lagner represented Garcia through his preliminary hearing and formal arraignment. Garcia then retained Gene P. Placidi, Esquire, to be his defense attorney. By that point in time, Lagner had already made the defense's request for pre-trial discovery. Discovery was provided to the defense on or around September 20, 2005. At that time, the prosecution provided to the defense its file, however it did not provide the records that showed that the Confidential Informant had

consented to having his conversations recorded, or the transcripts and/or recordings of his conversations with Garcia.  (See CP Dkt. No. 13 at 1).

On September 21, 2005, Garcia, through Attorney Placidi, filed a motion to suppress all evidence seized during the search of his apartment, arguing:

(a)    neither the search warrant nor the affidavit of probable cause established the informant's reliability;

(b)    neither the search warrant nor the affidavit of probable cause established that any drugs would be found at his residence;

(c)    The affidavit of probable cause did not contain sufficient facts to establish that cocaine or any other alleged drug and/or contraband would be found at Garcia's residence;

(d)    police lacked a legal basis to stop the alleged courier so none of the evidence seized from the courier's vehicle could be used to support the affidavit of probable cause; and,

(e)    the police failed to properly knock and announce their identity prior to entering the premises.

(CP Dkt. No. 4).

The Honorable Fred P. Anthony presided over a suppression hearing on November 3, 2005, at which Sgt. Nolan and Garcia's girlfriend, Stephanie Johnson, testified.  On November 8, 2005, Judge Anthony issued an Opinion and Order denying the suppression motion.  (CP Dkt. No. 7, Commonwealth v. Garcia, No. 2182 of 2005, slip op. (CP Erie, Nov. 8, 2005)).

Sometime thereafter, Attorney Placidi received and reviewed a copy of the recorded conversations between the Confidential Informant and Garcia.

On February 21, 2006, the Honorable Shad Connelly presided over Garcia's non-jury trial.  The Commonwealth presented the testimony of Sgt. Nolan.  He testified that during the search of Garcia's apartment on May 19, 2005, in which he participated, the police found "two baggies of cocaine and $550 of our buy money," which the police had given to the Confidential Informant.  (Trial Tr. at 5-6).

In total, the police recovered 22.6 grams of cocaine from Garcia's apartment.  (Id. at 9-10).  The Commonwealth also introduced Garcia's videotaped confession, which he had given to the police after his arrest.  (Id. at 10-13).

At the end of the trial, Attorney Placidi asked that the court to reconsider whether the evidence seized from Garcia's apartment should be suppressed.  He asserted that reconsideration was permissible because at the time of the suppression hearing he had not yet received the copy of the recorded conversations between the Confidential Informant and Garcia.  (Id. at 19-25).  Placidi moved to reopen the suppression record pursuant to Pennsylvania Rule of Criminal Procedure 581(J), which states:

> If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility.

Pa.R.Crim.P. 581(J).

In a subsequent brief Attorney Placidi filed with the court regarding the issue, he argued:

> The defendant submits that some of the alleged statements made by the defendant in the consensual recordings between the defendant and the confidential informant were not properly stated and/or taken out of context in the Affidavit of Probable Cause. Specifically, although Garcia does state on the consensual recordings that the courier drives a van, nowhere in the consensual recordings does Garcia ever tell the confidential information "that in the past the courier dropped off a supply at Garcia's residence when Garcia was not there."  This is vitally important because this is the only indication in the entire search warrant that states that Garcia's residence has anything to do with his drug trade.  The only other reference to the defendant's residence in the Affidavit of Probable Cause is the fact that the police observed an unknown Hispanic male later identified as Manuel Polanco-Urena of Bronx, NY and Garcia walking into his building together. However, it is clear in the Affidavit of Probable Cause that Polanco-Urena had nothing in his hands when he met with the defendant and went inside the building.

> If this Honorable Court finds that Garcia never told the confidential informant on the consensual recordings that his courier previously dropped off a cocaine supply at Garcia's residence when Garcia was not there, then, in that event, the Court has to review the Affidavit of Probable Cause without this reference to the defendant's residence.  If the Court then concludes that the Affidavit in support of the search warrant lacks sufficient probable cause to believe that drugs would be found inside the defendant's residence at

6

604 Young Road, Apartment 2, then, in that event, the trial court must suppress the evidence.

(CP Dkt. No. 13 at 4-5).

On February 28, 2006, Judge Connelly issued the following Order:

[T]he Court, *having reviewed the consensual recordings*, the search warrant, and Judge Anthony's Opinion of November 3, 2005, as well as the applicable law, hereby concludes that Pa.R.Crim.P. 581(J) and <u>Commonwealth v. DeMichel</u>, 277 A.2d 159 (Pa. 1971) make it discretionary with the Court to admit evidence previously unavailable at trial for admission and consideration as to a previous suppression motion.

*Wherefore, the Court finds said recordings admissible, but also concludes that their content does not render the affidavit of probable cause in the search warrant factually deficient, nor cause Judge Anthony's Opinion to be legally in error.*

The subsequent request to suppress based on the tapes is therefore DENIED.

(CP Dkt. No. 15 (emphasis added)).

On that same date, Judge Anthony issued his verdicts. He found Garcia guilty on all four counts (CP Dkt. No. 16) and subsequently sentenced him to an aggregate prison term of five to ten years.

Garcia, through Attorney Placidi, filed an appeal with the Superior Court of Pennsylvania. On June 19, 2006, Judge Connelly issued his 1925(b) Opinion, in which he set forth his conclusion that Garcia's judgment of sentence should be affirmed. (CP Dkt. No. 25, <u>Commonwealth v. Garcia</u>, No. 2182 of 2005, slip op. (CP Erie, June 19, 2006)).

The Superior Court subsequently dismissed Garcia's appeal for failure to file a brief. However, Garcia's direct appeal rights were later reinstated *nunc pro tunc* and the court appointed Nicole Denise Sloane, Esquire, to represent him. In that appeal, Garcia contended that the trial court erred in denying the motion to suppress because the police failed to knock and announce their presence. The Superior Court denied that claim on the merits. Garcia also raised three ineffective assistance of counsel claims, which the Superior Court denied without prejudice because such claims must be raised in a petition

under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (CP Dkt. No. 38, Commonwealth v. Garcia, 494 WDA 2007 (Pa.Super. Feb. 7, 2008)).

Garcia subsequently filed a PCRA petition (CP Dkt. No. 39), and Judge Connelly appointed William J. Hathaway to represent him (CP Dkt. No. 40). On May 9, 2008, Attorney Hathaway filed a supplemental motion for PCRA relief. (CP Dkt. No. 41).

On June 17, 2008, Judge Connelly issued an Opinion and Notice of Intent to Dismiss the supplemental motion for PCRA relief, and a month later he official denied relief. (CP Dkt. No. 43). Garcia, through Attorney Hathaway, filed an appeal with the Superior Court, in which he raised the following three claims:

1.  He was afforded ineffective assistance of counsel in that Attorney Placidi failed to exhaust, present and articulate all bases of argument in support of the motion to suppress;

2.  He was afforded ineffective assistance of counsel in that Attorney Sloan failed to assert in the direct appeal that Judge Connelly had abused his discretion in failing to reopen the record and conduct a supplemental suppression hearing after Attorney Placidi had obtained the recordings of his conversations with the confidential informant; and,

3.  Judge Connelly abused his discretion in failing to conduct an evidentiary hearing as to the claims of ineffective assistance of counsel.

(CP Dkt. No. 47, Commonwealth v. Garcia, 1377 WDA 2008, slip op. at 2 (Pa.Super. June 25, 2009) (reciting Garcia's claims as set forth in his brief).

On June 25, 2009, the Superior Court issued a Memorandum in which it affirmed Judge Connelly's decision to deny PCRA relief. It denied each of Garcia's claims on the merits.

In the present action, Garcia raises the following four claims:

Claim 1    Attorney Placidi was ineffective because, although the Assistant District Attorney offered to show him the paperwork regarding the Confidential Informant's consent to having his conversations with Garcia recorded, Attorney Placidi did not review that paperwork or challenge the

8

|            | Confidential Informant's alleged lack of consent at the suppression hearing. |
|------------|------------------------------------------------------------------------------|
| Claim 2    | Attorney Placidi was ineffective for failing:  (a) to obtain the transcripts of his recorded conversations with the Confidential Informant in order to challenge the accuracy of Det. Rosenthal's paraphrasing of their conversations in the affidavit of probable cause; (b) to challenge the Commonwealth's failure to disclose the transcripts of his recorded conversations; and, (c) to challenge the Confidential Informant's alleged hearsay statements contained in the affidavit of probable cause. |
| Claim 3    | Attorney Sloane was ineffective for failing to argue on direct appeal that Judge Connelly had abused his discretion when he denied the defense's renewed motion for suppression, which Attorney Placidi had made at the conclusion of the non-jury trial. |
| Claim 4    | The prosecution violated its obligation under Brady v. Maryland, 373 U.S. 83 (1963) when it failed "to reveal a plea agreement that the mandatory minimum would be waived by the District Attorney's Office in exchange for the confidential informant's testimony against" him. |

(ECF No. 1 at 11-19).  Garcia also has filed a 39-page brief in support of his petition.  (ECF No. 2).  He explains that Claims 1 through 3 coincide with the allegations he raised to the Superior Court in his PCRA appeal.  He admits that he has not exhausted Claim 4 to the state courts.  Respondents have filed their Answer (ECF No. 10) and the relevant state court records, and Garcia has filed a Reply (ECF No. 12).

**B.**   **Discussion**

    **1.**   **Ineffective Assistance of Counsel Claims**

        **(a)**   **Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  Under that statute, habeas relief is only available on the grounds that Garcia's judgment of sentence was obtained in violation of his federal constitutional rights.

28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Garcia acknowledges that the Superior Court rejected each of his ineffective assistance claim on the merits. Therefore, this Court's analysis of those claims is governed by AEDPA's standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Under AEDPA, when the state court has adjudicated a claim on the merits, federal habeas relief may only be granted when the state court's adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).[2] Review by the federal court also is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

The U.S. Supreme Court recently stressed the "highly deferential" review that this Court must accord the state court's decision:

---

[2] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. at 234, quoting Williams, 529 U.S. at 407.

We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). The Supreme Court also has recently elaborated:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of U.S. Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted).

11

The "clearly established Federal law" for AEDPA purposes in which to analyze Garcia's claims that Placidi and Sloane were ineffective is set forth in Strickland v. Washington, 466 U.S. 668 (1984).[3] Under Strickland, Garcia first must show that his counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that his counsel was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted). The Third Circuit Court has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Strickland also requires Garcia to demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." Id. at 694.

The Superior Court applied the correct legal standard when it evaluated Garcia's ineffective assistance claims. (CP Dkt. No. 47, Garcia, 1377 WDA 2008, slip op at 4). See also Commonwealth v.

---

[3] The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. See Evitts v. Lucey, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard. Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).

Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication of each of his ineffective assistance claims satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406.

The only remaining question for this Court to decide is whether the Superior Court's adjudication of any of Garcia's ineffective assistance claims was an "unreasonable application of" Strickland or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.


### (b)    Claims 1 and 2

In his first claim, Garcia contends that Attorney Placidi was ineffective because, although the Assistant District Attorney offered to show him the paperwork regarding the Confidential Informant's consent to having his conversations with Garcia recorded, he did not review that paperwork or challenge the informant's alleged lack of consent at the suppression hearing. In his second claim, Garcia argues that Attorney Placidi was ineffective for failing to: (a) obtain the transcripts of the recorded conversations in order to challenge the accuracy of Det. Rosenthal's paraphrasing in the affidavit of

13

probable cause; (b) to challenge the Commonwealth's failure to disclose the transcripts of his recorded

conversations; and (c) to challenge the Confidential Informant's alleged hearsay statements contained in

the affidavit of probable cause.

In denying these claims, the Superior Court held:

Garcia first argues that counsel was ineffective for failing to secure relevant evidence, including surveillance tapes of the confidential informant, and that the Commonwealth failed to disclose transcripts of the electronic surveillance. [Brief for Appellant] at 7. Garcia also argues that counsel failed to determine whether the Commonwealth had authority to conduct the electronic surveillance.

Here, Garcia does not cite to any case law or the record to support his claims. See Pa.R.A.P. 2119(a). Garcia does not demonstrate that the surveillance tapes or transcripts of the surveillance would have been favorable to his defense or would have changed the outcome of the proceedings. Indeed, Garcia does not indicate that the statements made on the recording and presented at the suppression hearing were false or misleading.

Further, while Garcia argues that the Commonwealth failed to identify the authority by which the recording was obtained, he does not state or demonstrate that the recording was illegal obtained. See Commonwealth v. Brewer, 876 A.2d 1029, 1035 (Pa.Super. 2005) (stating that "[i]t is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law.") (citation omitted).

Garcia next argues that counsel failed to challenge the admission of the confidential informant's hearsay statements in violation of his right to confront witnesses. Brief for Appellant at 7. Garcia further argues that counsel should have compelled the production of the informant at the hearing. Id.

Here, Garcia does not identify the hearsay statements at issue. Further, we note that hearsay statements may be used as a basis for issuing an affidavit of probable cause where the information is credible. See Commonwealth v. Gutierrez, 2009 PA Super 55, *3 (Pa.Super. 2009) (stating that "[i]f the warrant is based upon an anonymous source or confidential informant, the warrant must support the reliability of the unnamed source or informant with sufficient facts."); Commonwealth v. Otterson, 947 A.2d 1239, 1245 (Pa. Super. 2008) (stating that "where the evidence consists of the allegations of a police informant who has not previously provided information, probable cause requires only corroboration of principal elements of information not publicly available."). In the case at bar, the police corroborated the alleged hearsay statements made on the surveillance tapes. See Affidavit of Probable Cause, 5/19/05, at 2-4. Accordingly, we deem Garcia's argument to be without arguable merit.

As for the production of the confidential informant, this is a discovery matter and subject to the following test:

> [W]e hold that a defendant seeking production of a confidential informant at a suppression hearing must show that production is material to his defense, reasonable, and in the interest of justice. By this we mean that the defendant must demonstrate some good faith basis in fact to believe that a police officer-affiant willfully has included misstatements of facts in an affidavit of probable cause which misrepresents either the existence of the informant or the information conveyed by the informant; that without the informant's information there would not have been probable cause; and that production of the informant is the only way in which the defendant can substantiate this claim.

Commonwealth v. Baker, 946 A.2d 691, 693 (Pa.Super. 2008) (citation omitted).

Garcia has not demonstrated that the informant's identity was required or that the production of the informant at the hearing was the only way Garcia could substantiate his arguments. Indeed, Garcia has not supported his argument with any pertinent argument or citation to law or the record. See Pa.R.A.P. 2119(a). Accordingly, we deem Garcia's argument to be without arguable merit.

- - -

Garcia next argues that counsel was ineffective for failing to raise claims that the affidavit of probable cause contained false statements that were critical to a finding of probable cause. Brief for Appellant at 8-9. Garcia specifically asserts that there were no references tying his alleged drug activity to his residence and the affidavit contained misstatements about his girlfriend's role in the matter. Id. at 9-10.

Initially, we note that Garcia's argument that the misstatements were material to the trial court's finding that that the affidavit was valid is based upon mere speculation. See [Commonwealth v. Lambert, 797 A.2d 232, 248 (Pa. 2001)] (stating that appellant's claim that is based upon mere speculation as to a different result is not entitled to relief). Further, here, according to the affidavit of probable cause, the confidential informant provided information to the police from the recording device and phone calls to the police regarding information about the drugs. The information provided indicated that Garcia received drugs from a courier from New York and that Garcia would provide the drugs to the informant. The trial court, in denying Garcia's pre-trial Motion to suppress the evidence, noted that the police corroborated the information given by the confidential informant by conducting surveillance at Garcia's address. See Opinion, 11/9/05, at 7-8. Finally, Garcia does not demonstrate that the Motion to suppress would have been granted had someone else, other than his girlfriend, let him into the apartment on the day

in question. Accordingly, Garcia's arguments do not entitle him to relief. Based upon the foregoing, we conclude that counsel was not ineffective[.]

(CP Dkt. No. Garcia, 1377 WDA 2008, slip op. at 4, 7-8).

There is no basis for this Court to disturb the Superior Court's decision to reject Claims 1 and 2 under AEDPA's standard of review. With regard to Claim 1, Garcia has failed to offer a shred of evidence to support the suggestion that the Confidential Informant had not given his consent to participate in the electronic surveillance. In fact, at the beginning of the audio recordings of the surveillance, which are contained in the record before this Court, Sgt. Nolan asks the Confidential Informant if he consents to having his conversations taped, and the Confidential Informant answered in the affirmative.

As for Claim 2, when Attorney Placidi obtained the audio recordings of the conversation between the Confidential Informant and Garcia, he asked Judge Connelly to reopen the suppression hearing record and consider the defense's new challenges to the affidavit of probable cause. (Trial Tr. at 19-27; CP Dkt. No. 13). In response to this request, Judge Connelly reopened the suppression hearing record, admitted the recordings, reviewed them, and then concluded "that their content does not render the affidavit of probable cause in the search warrant factually deficient, nor cause Judge Anthony's Opinion to be legally in error. The subsequent request to suppress based on the tapes is therefore DENIED." (CP Dkt. No. 15). Therefore, Garcia is entitled to no relief on his contention that Placidi was ineffective for having failed, earlier in the state proceeding, to obtain the transcripts of his recorded conversations (Claim 2a), or for having failed to challenge the Commonwealth's failure to disclose the transcripts of his recorded conversations (Claim 2b). Garcia was not prejudiced.

Garcia's only remaining allegation is set forth in Claim 2c, in which he alleges that Attorney Placidi failed to challenge the admission of the Confidential Informant's hearsay statements in violation

of his right to confront witnesses. This claims likewise has no merit. As the Superior Court noted in denying this claim, Garcia has failed to identify the alleged hearsay statements about which he is complaining. Moreover, as this Court has previously held:

> [T]he Supreme Court has repeatedly explained that "[t]he right to confrontation is basically a trial right." Barber v. Page, 390 U.S. 719, 725 (1968); see also Pennsylvania v. Ritchie, 480 U.S. 39, 52-53 (1987) (plurality opinion); California v. Green, 399 U.S. 149, 157 (1970). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear *at trial* unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004) (emphasis added). Further, the Supreme Court has rejected Confrontation Clause challenges to the use of incompetent testimony during suppression hearings. See United States v. Matlock, 415 U.S. 164, 175 (1974); [McCray v. State of Illinois, 386 U.S. 300, 314 (1967)]; see also United States v. Boyce, 797 F.2d 691, 693 (8th Cir. 1986) ("the right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial"). Thus, even if counsel had objected to the testimony at the suppression hearing on the basis of the Confrontation Clause, that objection would have been meritless and would have properly been denied.

Akins v. Stowitsky, No. 1:05-cv-337, 2006 WL 3717395, *6 (W.D. Pa. Dec. 14, 2006), *certificate of appealability denied*, C.A. No. 06-5135 (3d Cir. Mar. 8, 2007). See also Ebert v. Gaetz, 610 F.3d 404, 414 (7th Cir. 2010) (rejecting state habeas petitioner's argument that his rights under the Confrontation Clause were violated, holding "because the court considered the statement at a suppression hearing, not [the petitioner's trial,] the Confrontation Clause was not implicated."), citing United States v. Harris, 403 U.S. 573, 584 (1971) (nothing that Confrontation Clause precedent "seems inapposite to … proceedings under the Fourth Amendment."). United States v. De Los Santos, 810 F.2d 1326, 1334-35 (5th Cir. 1987) (a defendant was not denied his Confrontation Clause right when the government did not release the identity of an informant or the information supplied by the informant at a suppression hearing).

For all of the foregoing reasons, Claim1 and Claims 2 should be denied. Garcia has not shown that the state court's decision denying either of these claims "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87.

### (c)    Claim 3

The Superior Court denied Garcia's next claim – that Attorney Sloane was ineffective for failing to argue on direct appeal that Judge Connelly had abused his discretion in failing to grant the defense's renewed motion for suppression (which Attorney Placidi had made at the conclusion of the non-jury trial) – because he failed to show that he was prejudiced.[4] (CP Dkt. No. 47, Garcia, 1377 WDA 2008, slip op. at 7-8). The Superior Court's adjudication of this claim easily withstands AEDPA's standard of review.

To satisfy his burden of demonstrating prejudice, Garcia must show that there is a reasonable probability that, but for Sloane's alleged ineffectiveness, the Superior Court would have reversed his judgment of sentence and ordered a remand. See United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000). This is a burden he cannot satisfy. That is because the Superior Court, in the PCRA proceeding, concluded that every challenge that Garcia was making in that appeal regarding the affidavit of probable cause, some of which he claimed Attorney Sloane should have made on direct appeal, lacked merit. (CP Dkt. No. 47, Garcia, 1377 WDA 2008, slip op. at 4-7). Therefore, Garcia cannot show that he was prejudiced by Sloane's alleged ineffectiveness and the Superior Court's decision rejecting this claim was not objectively unreasonable under AEDPA.

Accordingly, based upon the above analysis, Claim 3 should be denied.

---

[4]    Garcia asserts that Judge Connelly did not did not reopen the suppression hearing record to consider the audio recordings of the surveillance. His assertion is not true. In response to Attorney Placidi's request, Judge Connelly did reopen the suppression hearing record and reviewed the consensual recordings. (CP Dkt. No. 15).

**(d)  Claim 4**

In his final claim, Garcia contends that the Commonwealth violated its obligation under Brady v.

Maryland, 373 U.S. 83 (1963) for allegedly failing to notify the defense that the Confidential Informant

received favorable treatment in exchange for providing the police with information about Garcia's

criminal activities and for participating in the surveillance of Garcia.  Garcia admits that he did not raise

this claim before the state court and that it is procedurally defaulted.  (See ECF No. 2 at 23-29).  The

doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman v.

Thompson, 501 U.S. 722, 730 (1991), and it bars federal habeas review whenever the petitioner has

failed to present a federal claim in the state courts.  See, e.g., Lines v. Larkin, 208 F.3d 153, 162-69 (3d

Cir. 2000).

A petitioner whose constitutional claims are procedurally defaulted can overcome the default,

thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some

objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and

"actual prejudice."  Coleman, 501 U.S. at 750.  "Examples of 'cause' that are 'external to the defense'

include interference by the state with the conduct of a defense or the previous unavailability of the

factual or legal basis of a claim."  Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis

added).[5]

Garcia argues that his default of his Brady claim should be excused because he did not learn that

the Confidential Informant had received benefits from the Commonwealth until March of 2009.  (ECF

---

[5]      Another exception to the procedural default doctrine is the "miscarriage of justice" exception.  It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"  Schlup v. Delo, 513 U.S. 298, 316 (1995).  It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Id.  It is not applicable to the instant case.

No. 2 at 23-29). This argument must be rejected. Because Garcia's PCRA appeal was pending in March of 2009, Garcia was unable to raise his <u>Brady</u> claim at that time. However, once that proceeding concluded, he had 60 days to file a second PCRA petition and raise his <u>Brady</u> claim. <u>See</u> <u>Commonwealth v. Lark</u>, 746 A.2d 585 (Pa. 2000); 42 Pa.C.S. § 9545(b). Thus, Garcia had the opportunity to pursue this claim in state court and failed to do so. <u>See</u>, <u>e.g.</u>, <u>Siluk v. Beard</u>, 395 F.App'x 817, 820 (3d Cir. 2010) (the petitioner's "pro se status, without more, cannot constitute cause sufficient to excuse the procedural default of his federal claims in state court.").

In the alternative, although Garcia's <u>Brady</u> claim should be denied as procedurally defaulted, it also may be denied because it has no merit. The fact that the Confidential Informant may have received a benefit from the Commonwealth because he cooperated with the police in the criminal investigation of Garcia is immaterial to the outcome of Garcia's trial, because the Confidential Informant did not testify at the trial. Thus, his credibility was not an issue at that proceeding. The Commonwealth established Garcia's guilt through other evidence, and whether the Confidential Informant may have had an incentive to participate in the surveillance had no relevancy to the outcome of Garcia's trial. <u>See</u>, <u>e.g.</u>, <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995) ("[The] touchstone of materiality is a "reasonable probability" of a different result … A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."), quoting <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985).

Accordingly, Claim 4 should be denied as procedurally defaulted. It should also be denied on the merits.

### C.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  Applying those standards here, jurists of reason would not find it debatable whether each of Garcia's claims should be denied.  Accordingly, a certificate of appealability should be denied.


### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and

Recommendation.  Failure to do so will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  December 13 , 2011

cc:     The Honorable Sean J. McLaughlin
        United States District Judge